**SECOND DIVISION
MILLER, P. J.,
HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 28, 2021**

# In the Court of Appeals of Georgia

A21A0554. FOREMAN v. THE STATE.

MILLER, Presiding Judge.

After Najee Foreman was indicted on various sexual offenses, the trial court declared him incompetent to stand trial and eventually ordered him into involuntary civil commitment due to his substantial neuro-cognitive and memory disorders. Foreman seeks review of the trial court's order placing him in civil commitment, arguing that the trial court lacked jurisdiction to have him committed because it had ruled previously that he did not meet the criteria for civil commitment and had subsequently lost jurisdiction over him. Upon a close review of the statutory framework, we conclude that the competency statute did indeed grant the trial court jurisdiction to rehear and reconsider the issue of whether Foreman met the criteria for civil commitment. We therefore affirm.

"Whether a trial court lacked [jurisdiction] is an issue of law that we review de novo[.]" (Citation omitted.) *MacBeth v. State*, 304 Ga. App. 466 (696 SE2d 435) (2010).

A grand jury indicted Foreman on one count of aggravated sexual battery (OCGA § 16-6-22.2) and one count of child molestation (OCGA § 16-6-4 (a)). Before trial, the trial court ordered that the Georgia Department of Behavioral Health and Development Disabilities ("Department") conduct a mental evaluation of Foreman after his mental competency was called into question. Following a bench trial on Foreman's plea of incompetency, the trial court found that Foreman was incompetent to stand trial due to significant neuro-cognitive and memory disorders and ordered that the Department conduct further evaluation as to whether Foreman could potentially be restored to competency. Following further evaluation, on July 11, 2018, the trial court concluded that Foreman remained incompetent and would not be restorable in the foreseeable future. Noting that the parties had agreed that Foreman could be released on bond, the trial court ordered that Foreman be released on bond, subject to multiple conditions.

In May 2019, the State moved to revoke Foreman's bond, alleging that he had committed further crimes while released and that he had violated multiple provisions

2

of his bond by possessing illegal drugs and firearms. The State further argued that Foreman's actions showed that he presented a danger to the community and that he was a threat to continue to commit more offenses. Following a hearing, the trial court ordered that Foreman's competency to stand trial be re-evaluated. In February 2020, the State amended its motion to include a plea that the trial court consider civilly committing Foreman because he continued to present a danger to the community.

Following another hearing, on March 3, 2020, the trial court ordered that Foreman be involuntarily civilly committed. The trial court concluded that clear and convincing evidence showed that Foreman was "a mentally ill person, who presents a substantial risk of imminent harm to himself or others . . . and who is unable to care for his own physical health and safety as to create an imminently life-endangering crisis." The trial court ordered that Foreman be committed until the State conducted a review of his status or for one year, whichever was sooner, and that such commitment could be renewed annually until the maximum period for which he could have been sentenced, so long as Foreman met the criteria for commitment. Foreman appealed to the Supreme Court of Georgia, and that court transferred the case to us.[1]

_____

[1] Although the underlying criminal proceedings are ongoing and Foreman did not use the procedures for interlocutory review, OCGA § 5-6-34 (b), we nevertheless conclude that we have jurisdiction over this direct appeal. An order involuntarily

3

In his sole enumeration of error, Foreman argues that the trial court's jurisdiction to order him into civil commitment had lapsed once it had determined that he did not meet the criteria for civil commitment and then released him from custody, and so it lacked jurisdiction to revisit the matter and place him in civil commitment. Upon a close reading of the statutory framework, we are compelled to disagree.

When analyzing statutes, "we are mindful of the applicable principles of statutory construction and look diligently for the intention of the General Assembly. In so doing, the ordinary signification shall be applied to all words. Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly." (Citation and punctuation omitted.) *State v. Rich*, 348 Ga. App. 467, 471 (823 SE2d 563) (2019).

Georgia law provides that

If the court finds the accused is mentally incompetent to stand trial, the court may order a department physician or licensed psychologist to evaluate and diagnose the accused as to whether there is a substantial

committing a criminal defendant falls under the collateral order doctrine because it "(1) resolves an issue that is 'substantially separate' from the basic issues to be decided at trial, (2) would result in the loss of an important right if review had to await final judgment, and (3) completely and conclusively decides the issue on appeal such that nothing in the underlying action can affect it." (Citation omitted.) *Warren v. State*, 297 Ga. 810, 811 n.2 (778 SE2d 749) (2015).

probability that the accused will attain mental competency to stand trial in the foreseeable future. The court shall retain jurisdiction over the accused and shall transfer the accused to the physical custody of the [Department of Behavioral Health and Developmental Disabilities].

OCGA § 17-7-130 (c).

If the evaluation . . . shows that the accused is mentally incompetent to stand trial and that there is not a substantial probability that the accused will attain competency in the foreseeable future[, and] the accused is charged with a felony, the department shall return the physical custody of the accused to a sheriff of the jurisdiction of the court[.] . . . [T]he court shall [either c]onsider entry of a nolle prosequi of the charges pursuant to Code Section 17-8-3 and . . . request that the department petition the probate court of the jurisdiction of the accused's residence for civil commitment of the accused; or [r]etain jurisdiction of the accused and conduct a trial at which the court shall hear evidence and consider all psychiatric and psychological evaluations submitted to the court and determine whether the state has proved by clear and convincing evidence that the accused meets the criteria for civil commitment. . . . Following the trial[, i]f the court finds that the accused does not meet the criteria for civil commitment, the accused shall be released in accordance with the provisions of Chapter 6 of this title.

OCGA §§ 17-7-130 (e) (2) (A), (B) (i). Finally,

[i]f an accused is determined by a department physician or licensed psychologist to be mentally incompetent to stand trial, *whether or not*

5

*civilly committed pursuant to this Code section*, the state may file *at any time* a motion for rehearing on the issue of the accused's mental competency to stand trial. *If the state's motion is granted, the case shall proceed as provided in this Code section.*

(Emphasis added.) OCGA § 17-7-130 (g).

For multiple reasons, we reject Foreman's argument that we should interpret OCGA § 17-7-130 (e) (2) (B) (i) to completely terminate the trial court's authority over him once he is released because the context of the statute makes clear that further criminal proceedings are contemplated after an accused is released under that section.

We first note that OCGA § 17-7-130 (e) (2) (B) (i) provides that an accused who "does not meet the criteria for civil commitment . . . shall be released in accordance with the provisions of" the Georgia Code concerning the pre-trial release of prisoners on bond. See OCGA § 17-6-1, et seq. Thus, OCGA § 17-7-130 (e) (2) (B) (i) explicitly contemplates further proceedings after an accused is released. The exact nature of those additional proceedings is detailed in §§ 17-7-130 (f) and (g), which provide vehicles for the department's physician or licensed psychologist and the State, respectively, to reopen the proceedings upon a change in the accused's mental state. Both §§ 17-7-130 (f) and (g) provide that the issue of a criminal

6

accused's competency may be readdressed "at any time" after a trial court's previous ruling on the matter. Additionally, § 17-7-130 (g) specifically includes the phrase "whether or not civilly committed pursuant to this Code section," which indicates that the Legislature contemplated that such motions for rehearing could be filed even after a trial court determined that an accused did not meet the criteria for civil commitment and was released pursuant to OCGA § 17-7-130 (e) (2) (B) (i). The statute also clearly dictates that, if granted, a motion for rehearing on the issue of the accused's mental competency to stand trial would result in the case proceeding "as provided in this Code section," which we can only interpret to mean that a trial court may again analyze the issue of civil commitment as provided for in OCGA § 17-7-130 (c).

Second, we note that OCGA §§ 17-7-130 (e) (2) (A) and (B) set out two separate "tracks" for a trial court to follow depending on whether the State or trial court wish to continue prosecuting the charges. Under OCGA § 17-7-130 (e) (2) (A), the trial court enters a nolle prosequi of the charges and remands the question of civil commitment to probate court. Under OCGA § 17-7-130 (e) (2) (B), the trial court takes up the question of civil commitment itself and then either commits the accused or releases the accused on pre-trial bond. It would be illogical for the Legislature to set out these separate tracks if OCGA § 17-7-130 (e) (2) (B) (i) is interpreted to

7

completely terminate the trial court's authority over an accused upon release when the trial court could simply follow the nolle prosequi track to achieve the same result. Instead, the entire purpose of the release provision of OCGA § 17-7-130 (e) (2) (B) (i) is to provide an avenue for the State to continue prosecuting the charges if/when the accused's competency is restored.

In light of these statutory provisions, the only credible interpretation of OCGA § 17-7-130 (e) (2) (B) (i) is that an accused's release under that provision does not end a trial court's jurisdiction over that accused. Instead, the accused is merely released on pre-trial bond pending further criminal proceedings.

As part of his argument in favor of his interpretation, Foreman contends that, unless OCGA § 17-7-130 (e) (2) (B) (i) is interpreted to mean that the trial court's jurisdiction ends if it finds that the accused does not meet the criteria for civil commitment, that provision will violate equal protection and due process principles. It is true that, "[u]nder the canon of constitutional doubt, if a statute is susceptible of more than one meaning, one of which is constitutional and the other not, we interpret the statute as being consistent with the Constitution." (Citations omitted.) *Premier Health Care Investments, LLC v. UHS of Anchor, L.P.*, 310 Ga. 32, 48 (3) (e) (849 SE2d 441) (2020). However, "that ca[n]on cannot be relied upon to avoid a potential

8

constitutional issue when we can identify only one plausible interpretation of a statute." (Citation omitted.) Id. For the reasons cited above, the statute does not plausibly lend itself to Foreman's interpretation. We further note, as the Supreme Court did in its transfer order, that the trial court did not directly rule on Foreman's equal protection and due process claims regarding OCGA § 17-7-130, nor does Foreman argue that the trial court should have ruled on those claims, and so we have no cause to squarely address those issues in this appeal.

We are compelled to conclude that the competency statute provided a jurisdictional vehicle through OCGA § 17-7-130 (g) for the trial court to revisit the question of whether Foreman qualified for civil commitment despite his prior release. Because Foreman does not challenge the trial court's conclusion that he satisfied the relevant criteria for involuntary commitment, we affirm the trial court's commitment order.

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*